[621 NYS2d 698]

# In the Matter of KELLY F. and Another, Children Alleged to be Abused and/or Neglected. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHAEL G., Appellant.

Third Department, December 22, 1994

APPEARANCES OF COUNSEL

*John A. Cirando,* Syracuse, for appellant.

*Andrew S. Moses,* Canton, for respondent.

**OPINION OF THE COURT**

CREW III, J.

Petitioner commenced this proceeding in August 1992 alleging, *inter alia,* that respondent sexually abused his paramour's daughters, Kelly F. (born in January 1983) and Michol F. (born in October 1981).[1] A hearing was held, at the conclusion of which Family Court found that the children would be at imminent risk if allowed to remain with their mother and respondent, and placed the children in the custody of their father. Following a fact-finding hearing, Family Court concluded that there was sufficient evidence to support a finding that respondent has abused and neglected Kelly and neglected Michol. At the conclusion of the subsequent dispositional hearing, Family Court, *inter alia,* placed Kelly and Michol in their father's custody pursuant to Family Court Act § 1054.[2] This appeal by respondent followed.

To satisfy the preponderance of the evidence standard applicable to this proceeding *(see,* Family Ct Act § 1046 [b] [i]), Family Court Act § 1046 (a) (vi) permits a child's prior out-of-court statements relating to the abuse or neglect alleged to be introduced into evidence, and such statements, if sufficiently corroborated, will support a finding of abuse or neglect. In this regard, we acknowledge that the statute broadly provides that "[a]ny other evidence tending to support the reliability of the previous statements * * * shall be sufficient corroboration" (Family Ct Act § 1046 [a] [vi]), and that Family Court is vested with considerable discretion in the first instance to determine whether a child's statements have been sufficiently corroborated *(see, Matter of Department of Social Servs. [R. Children] v Waleska M.,* 195 AD2d 507, 509-510, *lv denied* 82 NY2d 660).

---

1. The children's parents were separated and, pursuant to a prior order of Family Court, the children's father was to have physical custody of Michol and the mother was to have physical custody of Kelly. At the time this proceeding was commenced, however, it appears that both Kelly and Michol were residing with their father. It also appears that petitioner commenced a separate neglect proceeding against the children's mother, which was heard with the instant proceeding.

2. The father's custody, which was to terminate on April 20, 1994, subsequently was extended to April 20, 1995.

Additionally, we recognize that "validation testimony from an expert investigating the allegations of sexual abuse is sufficient to corroborate an abused child's statements" *(Matter of Vincent I.,* 205 AD2d 878, 879). Here, however, notwithstanding the deference traditionally accorded Family Court's findings in this regard, we are of the view that Kelly's out-of-court statements were not sufficiently corroborated and, as such, Family Court's findings of abuse and neglect cannot stand.

Although John Nixon, a professor of psychology, opined that Kelly was an abused child and stated that Kelly's self-directed anger is a typical response from a sexually abused child, a careful review of Nixon's testimony reveals that he offered Family Court nothing more than his opinion that Kelly was telling the truth when she said she had been sexually abused by respondent. Indeed, it is apparent from the record that the interview process employed by Nixon was designed not to determine whether Kelly possessed any of the psychological and behavioral characteristics typically manifested by a child who has suffered sexual abuse but, rather, to determine whether Kelly's account of the alleged abuse was credible. In this regard, although Nixon certainly could testify as to Kelly's demeanor and the behavior she exhibited while telling Nixon what allegedly transpired with respondent, Nixon crossed the line, in our view, when he essentially vouched for Kelly's credibility *(see, Matter of Sanchez,* 141 Misc 2d 1066, 1069-1071).

We acknowledge that we have in the past deemed it significant when an expert witness opines that the child in question indeed is telling the truth *(see, e.g., Matter of Brandon UU.,* 193 AD2d 835, 837). In *Matter of Brandon UU., (supra),* however, there was other evidence which tended to corroborate the child's out-of-court statements, and the fact that the experts stated that they believed the child was being truthful and that he had not been "programmed" was but one factor we considered in concluding that the preponderance of the evidence standard had been satisfied. Additionally, although Kelly's statements to her father, Nixon and a child protective caseworker were reasonably consistent, Kelly's responses to certain questions posed by Nixon relative to the allegations of abuse were somewhat vague, and her statements to these individuals cannot, in any event, be used to cross-corroborate each other *(see, Matter of Nicole V.,* 71 NY2d 112, 123). As to the statements made by Michol, although statements made by

respective siblings may be used to cross-corroborate each other *(see, supra,* at 123-124), Kelly and Michol agreed only that respondent asked them to remove their clothes on one occasion and that they viewed pornographic movies, although they were not in agreement as to where this viewing occurred. Indeed, Michol denied that respondent touched her in a sexual manner and when confronted by petitioner's caseworker regarding the inconsistencies in their stories, Kelly and Michol each accused the other of lying. Moreover, Nixon testified that the sexual knowledge Kelly displayed was age appropriate *(compare, Matter of Jessica G.,* 200 AD2d 906, 907). Finally, Nixon testified that although Kelly insisted that she was telling the truth about the allegations of abuse set forth in the petition, she did admit that she previously had fabricated allegations of abuse with respect to other individuals to get her own way. Under these circumstances, we are unable to conclude that the corroboration requirement imposed by Family Court Act § 1046 (a) (vi) has been satisfied.

In concluding that Family Court's findings of abuse and neglect are not supported by a preponderance of the evidence, we wish to emphasize that we are not in any way passing on Kelly's credibility, nor are we suggesting that she fabricated the allegations of abuse and neglect at issue here. Rather, our conclusion is based solely upon petitioner and the Law Guardian's failure to elicit sufficient testimony from Nixon to corroborate Kelly's statements. Again, although it is significant that Nixon opined that Kelly was being truthful, such testimony, standing alone, does not in our view constitute reliable corroboration of Kelly's statements.

MIKOLL, J. P. (dissenting). We respectfully dissent.

Family Court is vested with considerable discretion in determining whether a child's statements have been sufficiently corroborated so as to ensure their reliability *(see, Matter of Christina F.,* 74 NY2d 532, 536). Family Court Act § 1046 (a) (vi) allows the child's prior out-of-court statements relating to abuse or neglect to be introduced in evidence, provided that these hearsay statements are corroborated so as to ensure their reliability *(see, Matter of Nicole V.,* 71 NY2d 112, 117-118).

The issue here is whether the corroborative evidence accepted by Family Court sustained the allegations of sexual

abuse. John Nixon, a psychologist and director of the SUNY Institute for Applied Behavioral Analysis, an evaluator and validator for petitioner, testified that he used the "Yuille" protocol in his examination of Kelly F. Nixon testified that this technique is an analytical process which has wide acceptance and is used in assessing statements of child abuse victims to determine whether the memory of the child can be credited for reliability and truthfulness. It was initiated by John Yuille, an internationally known expert in memory.

Nixon testified at length as to his application of the criteria of the Yuille protocol to validate the child's memory and he opined, based on a reasonable degree of professional certainty, that Kelly was a sexually abused child. We disagree with the majority's finding that the expert impermissibly crossed the line in vouching for the child's truthfulness although, we agree, that the record bears several instances of loose language which might impart such an impression. However, the true import of Nixon's testimony is to the effect that in utilizing the Yuille method, he first attempted to assess Kelly's memory and her understanding of truthfulness. He then proceeded to evaluate her statements of abuse per the Yuille protocol by taking into consideration whether the statements were coherent, considering the child's age and development, whether they were spontaneous reproductions or programmed and whether they contained sufficient detail to indicate an actual versus an imagined event. Nixon also utilized other important validation principles including evaluating the child's statement in terms of contextual imbedding, ability to deal with complications and, of special import, evaluation of the child's revelation of child abuse trauma symptoms—sadness, fear and guilt. He noted that his role was to look to the child's memory and not to attempt to get to the final truth and, in finding her memory intact, he was able to validate her statements.

We would consequently affirm Family Court's finding.

MERCURE and YESAWICH JR., JJ., concur with CREW III, J.; MIKOLL, J. P., and PETERS, J., dissent in a separate opinion by MIKOLL, J. P.

Ordered that the order is reversed, on the law, without costs, and petition dismissed.