■ In the Matter of ALENA O. and Another, Children Alleged to be Neglected. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant-Respondent; TORI P., Respondent-Appellant, and TYRONE P., Respondent. [633 NYS2d 127] —Order, Family Court, New York County (Judith Sheindlin, J.), entered on or about December 5, 1994, which, inter alia, after a fact finding hearing, dismissed those portions of the petition that charged respondent Tori P. with the derivative neglect of the child Tyrone P., Jr., and that charged respondent Tyrone P. with the neglect of the child Alena O. and the derivative neglect of the child Tyrone P., Jr., unanimously modified on the law and the facts, to the extent of reinstating the dismissed portions of the petition, making findings that the child Alena O. is a child neglected by Tyrone P., and that the child Tyrone P., Jr., is a child derivatively neglected by respondents Tori P. and Tyrone P., and the matter remanded to the Family Court for a dispositional hearing, and otherwise affirmed, without costs.

When this proceeding was commenced, Alena O. and Tyrone P., Jr., then ages nine years and eight months, respectively, resided with Tori P. the birth mother of both children, and Tyrone P., who is the biological father of Tyrone P., Jr. The petitions, filed August 22, 1994, principally allege that Alena is a neglected child and Tyrone P., Jr., is a derivatively neglected child because Tori P., who suffers from a mental illness that has required her hospitalization several times, engaged in excessive corporal punishment against Alena O. on August 13, 1994 and several other occasions. The charges against Tyrone P. were essentially premised on his failure to protect the children from their mother.

At the fact finding hearing held on December 5, 1994 petitioner adduced testimony from: Grace Morrison, C.S.W., who interviewed the child Alena on August 13, 1994 after she was brought into the emergency room at New York Hospital Cornell Medical Center for treatment of injuries inflicted by the mother Tori P.; Marcia Ribalta, M.D., who had treated

Tori P. on an inpatient basis during her hospitalizations on the psychiatric ward of Metropolitan Hospital; Frances Jones, a caseworker for the Commissioner of Social Services; and Jose Adan, M.D., a psychiatrist who had treated the daughter Alena. Extensive medical and psychiatric records were also made part of the record. Respondent Tori P., who testified on her own behalf, admitted beating her daughter with Tyrone P.'s belt on August 13, 1994, but denied that this occurred on "a regular basis." Respondent Tyrone P. did not proffer any evidence.

The evidence at the fact finding hearing established the following. First, Tori P. suffers from a mental illness that required three separate hospitalizations in 1994 because she was either a danger to herself or to others at these times. Specifically, in January 1994, shortly after Tyrone P., Jr.'s birth, Tori P. demonstrated psychotic behavior that, after the police were called to her home several times, resulted in her being admitted to Metropolitan Hospital. Upon her release in February, Tori P. attended her outpatient appointments, but did not comply with her medication regimen. Ultimately, in May 1994 she was readmitted to Metropolitan Hospital. Five days after the August 13, 1994 beating incident that precipitated these proceedings, Tori P. was again involuntarily hospitalized, with a diagnosis of schizoaffective disorder, bipolar type. During this stay, Tori P. had to be placed in seclusion numerous times and was prescribed Haldol, an antipsychotic medication. Tori P. consistently refused medication during her hospitalization and only relented after considerable efforts by the hospital staff. After this last hospitalization, Tori P.'s prognosis was downgraded to "guarded" because of her apparent lack of insight into her need for medication. According to Dr. Ribalta, without medication, Tori P. will "end up in the hospital again and again."

Second, Tori P. inflicted physical injury upon the child Alena, and Tyrone P. did not take sufficient action to prevent this harm. Tori P. admits that on August 13, 1994 she beat her daughter severely with a belt that Tyrone P. gave her upon request. Although Tyrone P. initially tried to prevent Tori P. from beating Alena, he stepped aside when Tori P. threatened to leave him unless he left her to her own devices. He then failed to call the police, and it appears the beating was only terminated after the nine year old child, to escape further harm, locked herself in the bathroom. Alena was injured in eight to nine separate areas, including the buttocks, shoulder, back, interior of the thighs, and the face. There were red, blue,

purple, and brownish bruises, lesions, and swelling. When Alena was examined, there was also evidence of older bruises and lesions. Other evidence in the record also tends to support a finding that this was far from an isolated instance of physical harm to the child Alena. Additionally, Tori P. admitted to Ms. Morrison that she was unable to control Alena and that she wanted the child out of the house. Tyrone P. told Ms. Jones that he was aware of the beatings of Alena by Tori P.

Third, the evidence shows that the infant Tyrone P., Jr., although not the target child, was at substantial risk of imminent harm in the P. household. The record indicates that in addition to "depression, suicidal ideation and post-partum psychosis," Tori P. considered "throwing herself off a 15th floor balcony" with Tyrone P., Jr. In the words of one of the DSS 2221 reports admitted into evidence, this is a family that was "overwhelmed" by the negative effects of Tori P.'s mental illness on her parenting ability. Efforts to assist the P. family by placement of homemakers in the P. household while Mr. P. worked have been undermined by Ms. P. and therefore proven unsuccessful.

Finally, the record establishes that Alena is, in the words of the Family Court, "a very difficult child." However, even if one accepts Tori P.'s sequence of events, that is, that the August 13, 1994 beating was triggered by Alena's refusal to clean her room and her writing an expletive on a lampshade, Ms. P.'s disciplinary measures lacked any rational sense of proportionality. Alena, who at a minimum has been subjected to several instances of excessive corporal punishment by Ms. P., has consequently been psychologically scarred as well as physically injured.

Although the wisdom of continuing to permit parents to employ corporal punishment to discipline their children remains a subject of public debate, it is beyond cavil that the consistent beating of a child with a belt to the point of causing injury requiring medical attention to the child falls outside the acceptable norm of any concept of reasonable disciplinary methods which will be tolerated by the law (*see, Matter of J. Children*, 216 AD2d 159; *Matter of Anthony C.*, 201 AD2d 342). Tori P.'s mental illness, while alone not a sufficient basis to render her *per se* a neglectful parent, is a factor that may be properly considered in a finding of neglect, particularly when, as here, there is a documented history of unsuccessful treatment and non-compliance with a medication regimen (*see, Matter of Trina Marie H.*, 48 NY2d 742; *Matter of Baby Boy E.*, 187 AD2d 512). "[P]roof of ongoing mental illness and the failure to

follow through with aftercare medication, which results in a parent's inability to care for her children in the foreseeable future, is a sufficient basis for a finding of neglect" (*Matter of Madeline R.*, 214 AD2d 445). In this case, the record amply demonstrates that Tori P.'s mental illness impairs her ability to care for her children. The history of beatings inflicted by Tori P. and her documented chronic mental illness established, by more than the required preponderance of the evidence standard, that Tori P. neglected Alena O. Thus, we affirm that branch of the Family Court's order which declares Alena O. to be a child neglected by Tori P.

In our view, the severe beatings inflicted on Alena O. by Tori P., coupled with evidence of Tori P.'s consideration of harm to Tyrone P., Jr., and Tori P.'s history of mental illness that impaired her parenting ability, demonstrated a substantial risk that Alena's infant brother Tyrone P., Jr., might be subjected to physical injury if left in Tori P.'s care. Actual physical injury to Tyrone P., Jr., was not a condition precedent for the making of a finding of derivative neglect as to him (*see, Matter of Jorge S.*, 211 AD2d 513, *lv denied* 85 NY2d 810) and such a finding was clearly warranted on these facts (*see, Matter of Tiffany F.*, 205 AD2d 429; *Matter of Vincent M.*, 193 AD2d 398). We therefore modify the Family Court's order to the extent of reinstating the dismissed portions of the petition that alleged that Tyrone P., Jr., was a child derivatively neglected by Tori P. and making such a finding upon our review of the record.

Turning to the question of whether the Family Court properly dismissed the petition against Alena's stepfather and Tyrone P., Jr.'s biological father, respondent Tyrone P., we begin by observing that "[n]eglect may include a failure to properly supervise by unreasonably *allowing* harm to be inflicted upon a child" (*Matter of Kayla PP.*, 204 AD2d 769, 771 [emphasis added]). The appropriate focus of the Family Court's inquiry should have been on whether a reasonable and prudent parent would have acted, or not acted, to prevent the neglect by Ms. P. under the circumstances with which Mr. P. was presented. The Family Court placed undue emphasis on what it described as a lack of a pattern of failing to act by Mr. P. In so doing, the court also ignored the deliberate, rather than accidental, nature of the conduct at issue.

It is undisputed that Tyrone P. failed to prevent Tori P. from beating Alena O. on August 13th with a belt he provided. Although the evidence showed that he tried to grab the belt, he gave up his intervention after Tori P. threatened to leave him.

In our view, Tyrone P.'s actions fell below the minimum degree of care that can be expected of a parent (*see, Matter of Vincent M., supra* [willingness to leave infant in father's care despite her awareness that husband's rough play with child was likely to produce injury constituted neglect]; *Matter of Glenn G.*, 154 Misc 2d 677 [Fam Ct, Kings County], *affd sub nom. Matter of Josephine G.*, 218 AD2d 656 [mother neglected children by failing to protect them from father's ongoing sexual abuse even if battered woman's syndrome rendered mother powerless to stop abuse]). We note that the beating of Alena O. was not an isolated incident in which the shock and indecisiveness of such a random act of violence might account for the inaction of Tyrone P. Tyrone P. clearly knew of, and likely was present for, prior beatings of Alena O. by Tori P. (*see, Commissioner of Social Servs. [Joanne W.] v Edyth W.*, 210 AD2d 328 [mother guilty of neglect where she failed to prevent further contact between daughter and boyfriend after she had become aware of the alleged abuse]). While there is evidence showing that Tyrone P. had come to Alena O.'s aid several times in the past to prevent Tori P. from beating her, and that Alena O. viewed Tyrone P. as a protector, a parent must be required to do more to prevent the abuse or neglect of a child in their care than was done by Tyrone P. (*see, Matter of J. Children, supra* [neglect finding justified where mother beat child and refused to take steps to protect children when father inflicted excessive corporal punishment]). Accordingly, we further modify the Family Court's order to the extent of reinstating the petition as against Tyrone P. and, upon our review of the record, making findings that he neglected his stepdaughter Alena O. and derivatively neglected his son Tyrone P., Jr. Concur—Rosenberger, J. P., Rubin, Asch, Williams and Mazzarelli, JJ.