Matter of L.M. (2006 NY Slip Op 51619(U))

[*1]

Matter of L.M.

2006 NY Slip Op 51619(U) [12 Misc 3d 1198(A)]

Decided on August 10, 2006

Family Court, Monroe County

O'Connor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through August 24, 2006; it will not be published in the printed Official Reports.

Decided on August 10, 2006

Family Court, Monroe County
In the Matter of a Proceeding under Article 10 of the Family Court Act L.M., Respondent.
NN 8704/05/06/08/10-05

Charles Baisch, Esq., Deputy County Attorney, for and with Petitioner DHS
Christine Redfield, Esq., Assistant Public Defender, for and with
L.M.
Edward Orlando, Esq., Law Guardian

Marilyn L. O'Connor, J.
The petitioner filed two petitions, one on July 14, 2005, alleging respondent had neglected her children, and the second, on July 15, 2005, alleging that L.M., (hereinafter "mother") had violated the existing order of supervision with respect to Diane M. only (DOB 2003). Both petitions allege that the mother had used corporal punishment on Diane; that she [*2]had not re-engaged with Parkridge Chemical Dependency Program and obtained a re-evaluation for treatment; and had not finished the daily partial hospitalization program at St. Mary's Hospital and so was discharged from the program on or about July 13, 2005 for non-attendance. The neglect petition further alleges that three of the children had come to day care in the midmorning complaining of not having had breakfast.
Of the mother's children, only one, Diane, was covered by a current order of supervision in a neglect case during the time period of the allegations herein and only that order can result in a finding of a violation.[FN1] That order prohibited the mother from using corporal punishment on Diane.
The mother initially consented to removal of the children, but at the Family Court Act, §1028 hearing three of the children were returned to the mother, one was placed with the maternal grandmother, and Alan was left in foster care by consent. A hearing was held over the course of two days.
LEGAL REQUIREMENTS AND STANDARD OF PROOF
A "neglected child", as alleged in this neglect petition, means "a child less than eighteen years of age whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care. . . in providing the child with proper supervision or guardianship", first, "by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment", and second, by "any other acts of a similarly serious nature requiring the aid of the court." (Family Court Act, § 1012[f][i][B]). For a child to be found to be neglected, the neglect petition must be proven by a preponderance of the evidence, and that evidence must be competent (not hearsay), material and relevant. (Family Court Act, § 1046.)
The violation petition can be granted if the court is satisfied by competent proof that the violation was done "willfully and without just cause". (Family Court Act, § 1072.) The level of proof needed for a court to find a willful violation of an order of supervision is not specified in the law. The legal arguments of the respondent's attorney indicate a belief that finding a violation must be based upon clear and convincing evidence. The submissions of the other attorneys do not touch on this underlying issue which need to be decided, particularly in this case where the evidence is not simply undisputed, clear facts, but requires careful analysis and weighing.
The court notes that the orders of supervision setting up the conditions to be met by respondents generally contain the following notice required by 22 NYCRR § 205.83:

NOTICE: WILLFUL FAILURE TO OBEY THE TERMS AND CONDITIONS OF THIS ORDER AND THE ORDER OF PROTECTION CONTAINED HEREIN MAY RESULT IN COMMITMENT TO JAIL FOR A TERM NOT TO EXCEED SIX MONTHS.
[*3]
Since a respondent faces the potential of a jail term and loss of freedom for a violation of an order of supervision and/or order of protection, it appears that the proof required should be more than the minimal preponderance of the evidence. One case, Matter of Elizabeth T. (299 AD2d 748 [3d Dept 2002]) has been found which applied the clear and convincing evidence standard to a violation issue without discussing why that standard was used or citing authority for its use. No other case law mentioning the level of proof legally required in a violation case has been found. (See, e.g., In re Marquise "EE", 257 AD2d 699, 701 [3rd Dept 1999], and Chemung County Dept. of Soc. Serv. v Tana GG, 301 AD2d 887,889 [3rd Dept 2003], both finding "ample evidence" of a violation; cf. Family Court Act, § 1046[b], requiring a determination that a child is abused or neglected to be based on a preponderance of evidence, but a determination of severe or repeated abuse to be based on clear and convincing evidence; juvenile delinquency requires proof beyond a reasonable doubt, FCA § 342.2[2]; PINS require proof beyond a reasonable doubt for fact findings, FCA § 744[b]; see 1-13 LexisNexis Answer Guide New York Family Court Proceedings, § 13.82, arguing that proof beyond a reasonable doubt should arguably be the standard in violations proceedings.)
Significantly, the standard of evidence for civil contempts pursuant to section 756 of the Judiciary Law, which may also result in imprisonment (Judiciary Law, § 770), is "reasonable certainty" (McCormick v Axelrod, 59 NY2d 574 [1983]; Tel Oil Co. v. City of Schnectady, 292 AD2d 725 [3rd Dept 2002]). Because of the seriousness of the consequences of a proven violation, and in consideration of the "reasonable certainty" standard for civil contempts, preponderance of the evidence appears to be too weak a standard of proof and beyond a reasonable doubt appears too strict. The "clear and convincing evidence" standard applied at least once by the Third Department and suggested by respondent's counsel in the case at bar, would appear to be the equivalent of "reasonable certainty". The degree of proof required in a particular type of proceeding "is the kind of question which has traditionally been left to the judiciary to resolve." (Woodby v. INS, 385 US 276, 284 [1966]). Accordingly, this court holds that the clear and convincing standard of proof must be met in order to establish a violation of an order and a finding of willfulness and without just cause under section 1072 of the Family Court Act.
Thus, the neglect petition must be proven by a preponderance of the non-hearsay evidence, and the violation petition must be proven by clear and convincing non-hearsay evidence.
NEGLECT PETITION
As to the neglect petition, the court finds by a preponderance of the evidence, including the mother's own admission, that the mother used corporal punishment on more than one of her children and that it was excessive corporal punishment. As stated in In re Peter G., (6 AD3d 201),

Pursuant to Family Court Act § 1012 (f) (i), a finding of neglect requires proof that the child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired" as a result of the parent's failure "to exercise a minimum degree of care." Parents are entitled to use reasonable corporal punishment to maintain discipline (see Matter of Anthony C., 201 AD2d 342, 607 NYS2d 324 [1994]); they are guilty of neglect if they use "excessive corporal punishment" (Family Ct Act § 1012 [f] [*4][I] [B]; see Penal Law § 35.10 [1] [a parent may use "physical force . . . when and to the extent that he reasonably believes it necessary to maintain discipline or to promote the welfare of (the child)"]).
Ample case law establishes that punishing children by hitting them with a belt is "excessive corporal punishment" and must not be tolerated. (In re Alysha M., 24 AD3d 255 [1st Dept 2005]; Michael M., Jr., 24 AD3d 199 [1st Dept 2005]; In re Jason G., 3 AD3d 340 [1st Dept 2004]; Vincent "KK" v. NY State Office of Children & Family Servs., 284 AD2d 777 [3d Dept 2001]; Suffolk County Dep't of Social Servs. v. Nicole S., 266 AD2d 556 [2nd Dept 1999]; In re Johannah "QQ", 266 AD2d 769 [3rd Dept 1999], cf. In re Venus S., 228 AD2d 314 [1st Dept 1996], where beating a child with a belt for no reason was determined on appeal to be abuse, not neglect). A distinction is whether a child is hit for punishment purposes or just beaten without any reason. Here, corporal punishment was involved to get the children's attention, and therefore while the corporal punishment was excessive, it is found to be neglect, not abuse.
The babysitter testified to hearing a recording made on her answering machine after the mother thought she had hung up her telephone. The testimony describing it was properly received non-hearsay evidence. (Cf. Nucci v Proper, 95 NY2d 597; People v Carroll, 95 NY2d 375; People v James, 93 NY2d 620; People v Torres, 118 AD2d 821.) The recording was not introduced into evidence or played for the court. However, the babysitter described the recording as follows:
I heard Yolynda screamin' at the children, telling them that she was sick of them. I heard slaps, I heard children screaming after the slaps. And I heard her telling them to clean up this mess. And I heard her say, you took your diaper off, and a slap after that. And I just listened until it was disconnected.
The caseworker also testified that she heard the tape and recognized the voices of the mother and two of her children (Diane and Kristen). While the babysitter may have recognized the voice of the mother, it is not credible she knew the voices of each child and could be sure of who was making specific comments.
In further testimony, the caseworker stated that when asked, the mother actually admitted to using corporal punishment, explaining, "That is the only way the children would pay attention to her." (Emphasis added.) The children stated that their mother hit them with a belt. One of these children, Darren, was a few months short of age 4 at the time of the conversation in July 2005, and the other, Kristen, was about 5 ½ at the time of the conversation. According to the caseworker, Kristen said that "mom uses a belt", a "belt mom wears in her pants, it's brown." The girl said she herself usually got a "time out", but that Mom used the belt on Darren and Diane. Darren, the younger child said that his mother "hit him when he is bad" and that "she uses the belt also on Diane." Children's hearsay testimony is admissible under an exception to the hearsay rule (Family Court Act, § 1046), but must be corroborated by something. In this case, the two children not only corroborate each other, but on July 13, 2005 the mother admitted to using the belt. Thus, it is undisputed that on at least one occasion the mother used a belt, i.e., corporal punishment, to discipline at least two of her children. Diane was in her care at the time.
The caseworker testified that after hearing from the children that the mother hit them with [*5]a belt, she physically checked the three children, Kristen, Diane and Darren, and they had no injuries. There is no evidence that the children were significantly injured physically by being struck by the belt or that their mental or emotional condition was actually impaired. However, it is obvious that their mental or emotional condition was in danger of becoming impaired if beating with a belt were to become a regular course of conduct, or if inflicted so hard that bruises, welts and cuts were to result. It is also clear that the respondent was the person who failed to exercise a minimum degree of care. A reasonable and prudent parent would not have acted as respondent did under the circumstances (Nicholson v. Scoppetta, 3 NY3d 357, 370 [2004]).
The court must find by a preponderance of the competent evidence that the mother's children are neglected children, at least two of them directly since the mother admitted using corporal punishment on her "children", and the others derivatively (Family Court Act, § 1046[a][i]). The preponderance of the evidence is that she sometimes used a belt on her children. As stated in Matter of Daniella HH (236 AD2d 715, 716 [3d Dept. 1997]),

Derivative findings of neglect should be entered where the evidence as to the child found to be neglected demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in respondent's care (see, Matter of Vincent M., 193 AD2d 398, 404; see also, Family Ct Act § 1012 [f] [i]).
Respondent's use of a belt demonstrates this substantial risk of harm. Matter of Samuel Y. (270 AD2d 531 [3rd Dept 2000]), cited by a respondent's attorney in opposition to a finding of derivative neglect, is easily distinguished. In Samuel Y. the evidence was that the mother hit one young child in the face in frustration with her hand one time, and promptly contacted her mother who took the little boy to the hospital. In contrast, the mother in the case at bar hit at least two children from time to time, with a belt, according to the preponderance of the evidence.
VIOLATION PETITION
The court is not satisfied that there is competent, clear and convincing proof that the mother violated the order against using corporal punishment on Diane willfully and without good cause. The mother had been told by a police officer that she could use corporal punishment to maintain discipline. In re Peter G., (6 AD3d 201, supra ), stated, "Parents are entitled to use reasonable corporal punishment to maintain discipline", citing Matter of Anthony C., 201 AD2d 342 [1994]). Thus, the police officer's apparent advise was to at least some degree correct.
This could have created confusion in the mother's mind the order said one thing and a police officer said another. The recording establishes that on one occasion respondent slapped or spanked a child. It does not establish hitting with a belt or who was slapped/spanked. The mother stated she believed she needed to maintain discipline when she struck a child, as heard in the recording. The child may have been Dianebut may have been another child. Furthermore, the striking which was recorded was quite apparently by a mother who was completely exasperated, and not deliberately, intentionally determined to use corporal punishment at that moment. The mother admitted using corporal punishment on "the children" not on Diane specifically or on all of the children for the purpose of getting their attention in the only way she knew to get the children's attention. Though the court finds the mother used corporal punishment, it simply has not been proven by "clear and convincing evidence" that the [*6]respondent mother willfully and without just cause violated the order with respect to corporally punishing Diane. The court can and will make a finding that the Respondent violated the court order but cannot find that the violation was willful because the facts do not meet the clear and convincing standard of proof determined by the court to be applicable to violation proceedings.
NON-CORPORAL PUNISHMENT ISSUES
Furthermore, the evidence is inadequate to conclude she substantially violated the terms of the order of supervision willfully and without just cause in any other way. The facts with respect to the mother failing to follow the order with respect to chemical dependency treatment and mental health treatment are not clear. The testimony was that she was about to be discharged from a chemical dependency program, after attending it for some time, but was not discharged because she entered a partial hospitalization programto deal with her chemical dependency problem. The caseworker testified she completed that partial hospitalization program. On re-cross by the mother's attorney, the testimony of the caseworker went as follows (January 18, 2006 transcript, p. 68):
Q. My question was she wasn't discharged until after she started attending the partial hospitalization? That was my question?
A. No.
*****
Q. When did Ms. M. get discharged from the Drug Treatment Program was after she was in the partial hospitalization program? (Sic.)
A. Yes.
Q. And did she resume the chemical dependency after the partial hospitalization?
A. No.
Q. And was there a recommendation that she resume her chemical dependency [program] after the partial hospitalization?
A. No.
Q. And that really is not an issue any more, is it, today?
A. No.
The caseworker also testified that the mother followed her other suggestions, made
July 13, 2005, to continue mental health treatment. When asked, "And she followed through with mental health, is that correct?", the answer was, "She did, yes." (January 18, 2006 transcript, p. 65.) Nonetheless, two days later the Department filed the neglect/removal petition. The caseworker said this was done because it was believed she used a belt on two children and she was out of control emotionally, giving cause for concern that the children would be harmed.
The caseworker further testified that Catholic Family Services was closing its services to mother because of non-attendance in early July 2005, but those were preventive services which she was not ordered to obtainso this is irrelevant to the violation petition and only marginally relevant to the neglect petition.
Regarding the ordering provision that she feed the children properly, the only evidence is that the children were fed breakfast at day care by the day care provider, around 10:30 or 11 AM, which generally seems late for children's breakfasts. However, there was no testimony as to how long the children had to wait to eat after getting up.
[*7]
In summary, the court has considered the evidence of the mother's alleged willful violations of the order, without just cause, regarding chemical dependency, mental health, and feeding the children adequately, and finds the evidence was confusing, unclear, unconvincing, and unpersuasive. The evidence actually showed she followed through with the requirements of the dispositional order, though perhaps not as neatly as would have been preferred, but certainly did not willfully and intentionally violate the order in other ways.
NOW THEREFORE, for the reasons set forth above, it is
FOUND that the children of respondent/mother are neglected children pursuant to Family Court Act, § 1012 (f)(i)(B), at least two of the children by the infliction of excessive corporal punishment, with the remaining children being derivatively neglected as a result of the same, and that their physical, mental or emotional condition has been impaired or was in imminent danger of becoming impaired as a result of the failure of the respondent to exercise a minimum degree of care in providing the child with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment; and it is further
FOUND, with respect to the violation petition, that the evidence regarding willfulness is not clear and convincing; the evidence that respondent used corporal punishment on Diane specifically is not clear and convincing; and the evidence is not clear and convincing that respondent willfully and without just cause violated the order of extension dated March 17, 2005 with respect to a prior neglect finding (Docket Number NN 13293-03) in any other way; and it is further
ORDERED that this matter is set down for a dispositional hearing (Family Court Act,
§1047) regarding the neglect finding on Aug. 21st, 2006 at 2:00 P.M.
DATED: August 10, 2006
 Rochester, NY ___________________________________
HON. MARILYN L. O'CONNOR, FCJ
NOTICE: Pursuant to section 1113 of the Family Court Act, an appeal must be taken within thirty days of receipt of the order by appellant in court, thirty-five days from the mailing of the order to the appellant by the clerk of the court, or thirty days after service by a party or law guardian upon the appellant, whichever is earliest.
MAILED OR HAND-DELIVERED: Charles Baisch, Esq., Christine Redfield, Esq., Edward Orlando, Esq.

Footnotes

Footnote 1:The relevant order was made November 18, 2004. There had been a finding of neglect against the mother regarding Darren, on March 21, 2002, and that order was extended for one year but had expired by the time of the allegations in the two petitions under consideration here.