■ In the Matter of SASHA B., a Child Alleged to be Neglected. ERICA B., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [905 NYS2d 563]—

Order, Family Court, Bronx County (Monica Drinane, J.), entered on or about June 22, 2009, which, upon a fact-finding determination that respondent mother neglected the subject child, inter alia, placed the child in the custody of the Commissioner of Social Services pending the completion of the next permanency hearing, affirmed insofar as it brings up for review the fact-finding determination, and the appeal otherwise dismissed as moot, without costs.

The placement has been rendered moot as the date scheduled for the next permanency hearing has passed (*see Matter of Taisha R.,* 14 AD3d 410 [2005]).

The finding that respondent neglected the child was supported by a preponderance of the evidence (*see* Family Ct Act § 1012 [f] [i] [B]; § 1046 [b] [i]), which showed that on their way home from school respondent exited the subway train and left her child, who was asleep, alone on the train (*see Matter of Joyce A-M. [Yvette A.],* 68 AD3d 417 [2009]). The child later found her way back to school, where she told a staff person that she had been left on the train and did not know where her mother was. School personnel called the mother and, when no answer was received, the grandmother picked the child up from school. Respondent's claim that her actions were inadvertent is undermined by the fact that she made no attempt to seek assistance. The court also properly found that respondent exposed the child to an imminent risk of harm based on the child's statement—which was corroborated by respondent's statements to

the caseworker (*see e.g. Matter of R./B. Children*, 256 AD2d 96 [1998])—that respondent had left her alone on the train twice before, and by the reasonable inference, based on the fact the child returned to school, that she was unable to navigate her way home. Concur—Tom, J.P., Sweeny, Nardelli and Renwick, JJ.

Andrias, J., dissents in a memorandum as follows: There is nothing in this record supporting the Family Court's finding that respondent mother neglected her child as that term is defined in the statute and has been interpreted by the Court of Appeals.

In determining whether the mother placed the child's physical, mental or emotional condition in "imminent danger of becoming impaired as a result of the failure . . . to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]), the Family Court was required to "focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior"; the imminent danger "must be near or impending, not merely possible" (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]). On the record before us, while one may argue that it is undesirable parental behavior to create a situation, inadvertently or not, that leads to an 11½ year old traveling the subway on her own, the facts at most support a finding that future harm was merely possible, not that it was near or impending (*see Matter of Anna F.*, 56 AD3d 1197 [2008]). Accordingly, because I do not believe that the presentment agency met its burden of establishing neglect based on inadequate guardianship by a preponderance of the evidence, I would reverse and vacate the finding of neglect.

A report of an oral transmission by a shelter worker stated that on the afternoon of November 12, 2008, the mother got off the "D" train at 59th Street thinking that her daughter was right behind her. When she looked back and saw that the child was not there, the mother, instead of immediately reporting the child missing, returned to the Bronx Shelter where they lived and called the police. During that report, the source received word that the child had returned to her school in Queens. The mother called the child's grandmother, who lived in Queens, and asked her to pick up the child.

The mother explained to the caseworker that the child was sleeping next to her as they took the train back from the child's school. She nudged the child to wake her up, telling her that their stop was approaching. After the mother got off, she turned around to see if the child was behind her and saw the door close and the child still sitting on the train.

The child told the caseworker that she was on the train with her mother coming from school. She fell asleep and when she woke up she did not see her mother. The child got off the train and went back to her school. When the school could not reach her mother, it called her grandmother who picked her up. When asked if this had happened before, the child told the caseworker that she "lost her mother two times prior to this incident in the train station." The caseworker did not ask the child if there were any occasions, other than going to school, where she traveled the subway alone.

The Family Court, drawing the strongest negative inference possible from the mother's failure to appear and testify, found, based on the child's statements that she had been left on the train at least two times before, that the mother was exposing the child to imminent risk of harm, that there was a likelihood that the child on the date in question was left on the train and that while the child went back to school there was no showing she knew how to get home or that she was old enough to travel on her own.

"[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d at 368 [citation omitted]). Not all objectionable parental behavior falls within the legal definition of neglect (*see Matter of William EE.*, 157 AD2d 974 [1990]). Here, the mother made an extraordinary effort, given her limited means, to provide proper supervision by taking her $11^{1}/_{2}$-year-old daughter to and from their shelter in the Bronx to her school in Queens, each and every school day. As to the November 12, 2008 incident, the mother told the caseworker that she nudged the child at the stop and did not realize that the child was not behind her until after she exited. Although the mother, perhaps out of fear or panic, did not report the incident immediately, she did notify the police when she returned to the shelter in the Bronx. The child was able to successfully navigate the subway back to her school in Queens and there is no evidence that the child was physically endangered or traumatized by the incident. Indeed, the child told the caseworker that she felt safe living with her mother.

The majority's reliance on *Matter of Joyce A-M. (Yvette A.)* (68 AD3d 417 [2009]) is misplaced. In *Joyce A-M.* we held, "The

finding of neglect is supported by a preponderance of the evidence showing that respondent failed to timely pick up the children from day care, necessitating police involvement to ensure their safety, and had been found guilty of neglect in prior, separate proceedings" (*id.* at 418). However, in *Joyce A-M.* the children were four and two respectively, making the imminent danger apparent. Here, the child was 11¹/₂ and safely made her way back to her school. Further, in *Joyce A-M.* there was also a prior order finding the mother neglected one of the children through drug abuse. Here, there was no prior finding of neglect; only the unsubstantiated allegations of the child to a social worker concerning two prior incidents.

In that regard, "[a] child's unsworn out-of-court statements relating to abuse or neglect are admissible at a fact-finding hearing, but a finding of abuse or neglect can only be based on those statements if they are sufficiently corroborated" (*Matter of Kayla F.,* 39 AD3d 983, 984 [2007]). Although such statements may be corroborated by "[a]ny other evidence tending to support [their] reliability" (Family Ct Act § 1046 [a] [vi]), there is a "threshold of reliability that the evidence must meet" (*Matter of Zachariah VV.,* 262 AD2d 719, 720 [1999], *lv denied* 94 NY2d 756 [1999]). Here, the caseworker testified that the child told her that she had lost her mother twice before. She did not provide any details as to how the child came to lose her mother, the length of the separation, what steps the mother took to find the child or how the child and her mother were reunited. There was no independent corroboration of those incidents and, given the general nature of the child's statement, the mere fact that the November 12, 2008 incident involved the child being left behind on the subway did not provide sufficient corroboration of the prior incidents to support a finding of neglect (*see Matter of Peter G.,* 6 AD3d 201, 204 [2004], *appeal dismissed* 3 NY3d 655 [2004]). "While Family Court could draw a strong inference against the [mother] due to [her] failure to testify, that inference cannot establish corroboration where it otherwise does not exist" (*Matter of Kayla F.,* 39 AD3d at 985 [citation omitted]).

Accordingly, while I do not condone the mother's conduct, I would vacate the finding of neglect.