■ In the Matter of VINCENT M. and Another, Children Alleged to be Abused and Neglected. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; SANDRA M. et al., Respondents. [597 NYS2d 309] —Order, Family Court, New York County (Michael Gage, J.), entered November 5, 1992, which dismissed the abuse and neglect petitions against respondent Sandra M. and the abuse petition against respondent Vincent C., and entered a finding of neglect against respondent Vincent C. as to both children, unanimously modified, on the law, the facts and in the exercise of discretion, to reverse the dismissal of the neglect petition against respondent Sandra M. and to enter a finding of neglect against respondent Sandra M. as to both children and to reverse the dismissal of

the abuse petition against respondent Vincent C. as to Vincent M. and to enter a finding of abuse against respondent Vincent C. as to Vincent M., and otherwise affirmed, without costs and the matter remanded for a dispositional hearing and, pending further order of the Family Court, the children are released to the custody of Sandra M.

On April 13, 1992, three month old Vincent M. was found by his mother, respondent Sandra M., to have an injured leg. Sandra M. and respondent Vincent C., the child's father, immediately took the baby to St. Luke's Hospital, where it was discovered that the child's tibia was fractured. An investigation was commenced which resulted in the within petition charging respondents with abuse and neglect of both Vincent M. and his sister, Viondra.

At the fact-finding hearing, caseworker Sheila Davis testified that she first interviewed respondents at their home on April 15, 1992, at which time they informed her that Vincent C. had informed Sandra M. at the hospital that, earlier in the day on which the baby's injury had been discovered, he had been playing with the child and had accidentally fallen on him. Sandra M. informed Ms. Davis that she had not told the hospital personnel how the incident had occurred because she did not find out about it until after the child was admitted.

After this interview, further investigation was undertaken by the hospital which revealed that the child had two healed fractures, one of the rib and one of the skull. Two days later, after learning of the infant's healed fractures, Ms. Davis interviewed respondents again, at which time she informed them that the child had prior injuries and asked them if they could explain them. They stated that they had no specific explanation for the rib fracture but that maybe the child had fallen off the bed. The only explanation they proffered for his fractured skull was the possibility that he had knocked his head against a hair dryer which they had placed in his crib hoping that its noise would stop his crying. Sandra M. also mentioned that she did not know how the child had been hurt because she had been ill after his birth and had not been caring for him at that time. She also stated that she felt that Vincent C. was rough in his treatment of Vincent M. and that she had told him not to play so roughly with the child. Vincent C. admitted that he "play[ed] rough" with the child, including holding him high in the air and shaking him.

Dr. Elizabeth Watkins testified that the two healed fractures had occurred four to six weeks before Vincent M.'s

hospitalization. She felt that a fairly strong force directly over the area of the single broken rib would have been necessary to cause the rib fracture and that the child would have had to have fallen from a "significant" height in order to sustain the skull fracture and that a fall from a bed or chair would not normally result in such an injury. She doubted that tossing the child into the air and catching him would have caused the rib fracture, though it was conceivable that, if the child had been tossed and had then started to fall he could have been grabbed with such force as to cause the injury. As to the leg fracture, she opined that it could have been caused by an accident as was described by the parents. She also noted that an infant's bones are more difficult to break than an adult's because of their flexibility. Tests had revealed that Vincent M. did not suffer from a condition which could have caused his bones to have broken more easily than the average infant's.

After her interview with the parents, Ms. Davis took their then 15 month old daughter, Viondra, for a physical examination, which showed that she was healthy and revealed no evidence of physical abuse.

Vincent C. testified at the hearing that, on the day the baby's leg was broken he had been playing with the baby and was holding him in the air. They were both laughing. However, Vincent C., who was walking across the room, then tripped on the coffee table. The baby slid down his leg and he fell with his knee landing on the baby's leg. He did not immediately tell Sandra M. about the incident because she was very protective of the children and he checked the child over and did not believe that he was injured. He also noted that Sandra M. had repeatedly told him not to play with the baby as roughly as he was in the habit of doing. For example, he would hold the baby "tightly because [he] wanted to have a good grip on him" and would bounce him up and down on his knee or would toss him up in the air and catch him. He was more "aggressive" with Vincent M. than with Viondra because Vincent M. was a boy. However, he also mentioned that Vincent M. cried a great deal and noted that the baby "had been crying from the day he was born."

Once, while he was caring for the baby in February, 1992, Vincent C. had left him on the bed, lying on his back and propped up by and surrounded by pillows, while he left the room to attend to Viondra. While he was gone the baby had fallen to the floor, which was not carpeted. He did not know whether this fall had caused Vincent M.'s fractured rib and

skull, but he had no other explanations other than his habit of gripping the baby tightly.

Sandra M. testified that Vincent C. first told her he had fallen on the baby while they were at the hospital waiting for x-rays to be taken. Vincent C. had told her that while he was dressing the baby, the baby had awakened and "started to cry as usual." Vincent C. was holding the baby in the air and walking when he tripped on the coffee table. The baby slid down his arm and he fell with his knee landing on the baby's leg. Sandra M. also testified that Vincent C. was in the habit of playing too roughly with Vincent M., though she did not feel that the baby could be hurt by it. The only description of this rough play that she was able to give was that Vincent C. would toss the child a short distance into the air or would bounce him on his knee. Sandra M. offered no explanation for the child's broken rib and, as to the broken skull, again theorized that he had hit his head on the hair dryer that she had placed in his bassinet. However, she also testified that, after finding out about these fractures, she had asked Vincent C. about them and he had then told her that the baby had once fallen from their bed.

Sandra M. also testified that Vincent M. cried "constantly" and had appeared to be in pain from the time of his birth. Hospital personnel had told her that the cause of the crying was probably colic and that it would most likely last for no more than three months. Soon after the child's birth, Sandra M. had been hospitalized for two weeks due to complications from her Caesarean section and had been ill for some time after her return home. During her hospitalization, and at other times, the children had been left in the care of Vincent C., as well as with relatives or, occasionally, another babysitter. Prior to the hearing she and Vincent C. had begun living apart.

Upon the evidence adduced at the fact-finding hearing, Family Court found that the injuries to the child had been accidental but that they had demonstrated sufficiently unreasonable conduct on Vincent C.'s part so as to warrant a finding of neglect as to both children. It dismissed the abuse petition against Vincent C. and both neglect and abuse petitions against Sandra M. On this appeal, petitioner, joined by the law guardian, argues that the abuse petitions against both parents as to Vincent M., as well as the neglect petition against Sandra M. as to both children, should have been sustained.

Family Court Act § 1046 (a) (ii) provides that a prima facie

case of abuse or neglect is established by "proof of injuries sustained by a child * * * of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child". Although the ultimate burden of proof of establishing by a fair preponderance of the evidence that the respondents abused or neglected the subject child remains upon petitioner, once a prima facie case is established, the burden of coming forward shifts to the parents, who are then required to offer a satisfactory explanation for the injuries *(Matter of James P.,* 137 AD2d 461, 462; *Matter of Valerie Leonice T.,* 107 AD2d 327). In the case at bar, contrary to the Family Court, we find that the proffered explanation for the three fractures suffered by this three month old child as accidental is not credible and that, as a result, the parents have failed to provide a satisfactory explanation for the injuries.

There is no question that the serious fractures sustained by Vincent M. establish a prima facie case of abuse. In finding that these injuries had been adequately explained and that petitioner had therefore not sustained its burden, the Family Court relied on the fact that it was not possible to medically rule out an accidental cause for each of the fractures. However, as noted by the Court of Appeals, "the credibility of the 'accident' explanation diminishes as the instances of similar alleged 'accidental' injury increase." *(People v Henson,* 33 NY2d 63, 73.) The possibility that, over the course of six weeks, the infant suffered three completely accidental injuries serious enough to have resulted in fractures would appear to be extremely small.

Moreover, upon close examination, the parents' descriptions of the incidents which they offered as explanation for the injuries are very unconvincing. First, virtually no weight can be given to Vincent C.'s implicit explanation that the rib fracture could have been the result of what he described as his customary rough play with the infant which, though perhaps ill-advised, was not intentionally injurious. The medical testimony made clear that the type of handling which could have resulted in such injuries would have had to exert such extraordinary force on the rib so as to be obviously injurious. In light of this, Vincent C.'s self-serving explanation is simply not believable. Nor did the medical testimony lend credence to the supposition that a fall from his parents' bed, which Vincent C. had never mentioned to anyone at the time it allegedly happened, could have fractured the baby's skull

and, in fact, the expert testimony indicated that a fall from a bed or chair would not cause a skull fracture. Moreover, the alternative explanation offered by the parents for the child's fractured skull, i.e., that he hit his head against a hair dryer left in his crib with such force as to fracture his own skull, is patently absurd.

In addition to the evidence provided by the injuries themselves, we note the fact, testified to emphatically by both parents, that Vincent M. cried incessantly. In the context of the other evidence presented here, this circumstance provides evidence of motive and supports an inference that the injuries were a result of abusive behavior designed to quiet the child.

For these reasons, we find that, taken as a whole, the evidence was sufficient to sustain the abuse petition against Vincent C. in that he inflicted upon the child "physical injury by other than accidental means which cause[d] or create[d] a substantial risk of death, or serious or protracted disfigurement" (Family Ct Act § 1012 [e] [i]). However, as to Sandra M., we do not find that petitioner has sustained its burden to demonstrate that she abused the infant. In particular we note the evidence of her illness, which required a two week hospitalization after the child's birth and which continued to impair her abilities for some time after her return home, the testimony by both parents indicating that it was during the child's care by Vincent C. that his "accidents" took place, and the lack of any evidence that Sandra M. had reason to believe that the child had suffered such serious injuries prior to her discovery of his broken leg, at which time she promptly rushed him to the hospital.

Nevertheless, we find that the petition alleging that Sandra M. neglected Vincent M. should have been sustained. Family Court Act § 1012 (f) states that a "neglected child" is one "(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care * * * (B) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof". In this case, there is no question that Sandra M. was aware that Vincent C.'s behavior toward the child was improper and likely to produce injury, as both parties agreed that she had frequently warned him about it. Moreover, it is unlikely in the extreme that she believed that Vincent C.'s repeated, inappropriate roughness with this colicky, "constantly" crying child was

merely harmless "play," as she chose to characterize it at the hearing. Under these circumstances, her willingness to leave the child in Vincent C.'s care must be characterized as neglect.

We also find that the petition concerning Viondra alleging neglect by Vincent C. was properly sustained and that a finding of neglect against respondent Sandra M. should also be made. Family Court Act § 1046 (a) (i) provides that "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent". Even in the absence of direct evidence of actual abuse or neglect of a second child, derivative findings of neglect should be entered where the evidence as to the directly abused or neglected child or children demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in their care thereby making such a child a neglected child under Family Court Act § 1012 (f) (i) (B) *(see, Matter of Christina Maria C.,* 89 AD2d 855). In this case, the behavior of Vincent C. and Sandra M. as to Vincent M. clearly demonstrates such a situation with respect to Viondra.

In light of these findings, the matter must be remanded to Family Court for a dispositional hearing. Pending further order of the Family Court, we find that the children should be released to the custody of Sandra M. In so directing, we take into account that the parties have separated and are living apart, that Sandra M.'s illness following Vincent M.'s birth was a primary contributing factor in her failure to take steps to keep the child safe, and that, in all other respects, she appears to have properly cared for her children. Concur— Milonas, J. P., Ellerin, Asch, Kassal and Rubin, JJ.