OPINION OF THE COURT
Catterson, J.
This appeal arises from a Family Court determination that the respondents, the parents and the nanny of a baby girl, Victoria O., abused the infant and derivatively neglected her siblings. The respondents contend that the court’s finding was not supported by a preponderance of the evidence even though it is undisputed that Victoria O. suffered seven distinct fractures of her arms, legs and skull before reaching the age of five months. The respondents argue nevertheless that the preponderance of evidence standard requires evidence that “pinpoints” the time when the injuries occurred, and thus establishes which caregiver was in control of the child at the time. The respondents misconstrue the precedent on which they purport to rely because, of course, any such requirement would automatically *70 immunize entire households where multiple caregivers share responsibility for child care.
The record reflects that on February 16, 2005, flve-month-old Victoria O. was taken to the emergency room with a “painfully” swollen left arm. She was diagnosed with a fracture and admitted for treatment. On February 18, 2005, a pediatrician at New York Presbyterian Hospital examined Victoria and reviewed her medical record and X rays in response to a report of suspected child abuse. The pediatrician discovered that in addition to the fracture for which she was admitted, Victoria had suffered six additional fractures, the oldest of which may have occurred when she was just two months old. The same day, the Administration for Children’s Services (hereinafter referred to as ACS) filed a petition initiating child abuse and neglect proceedings against Victoria’s parents, Kenneth O. and Nancy O., and Merlene R, who worked as a nanny for the family 12 hours a day, five days a week, during the relevant period. The petition alleged that Victoria sustained multiple injuries for which the parents provided no explanation. A separate petition was filed alleging abuse and neglect of Victoria’s three siblings.*
The record further reflects that 11 witnesses testified over 42 days at a fact-finding hearing. Among the witnesses was the pediatrician who diagnosed the fractures. Her testimony adduced the following: Victoria suffered seven fractures—two left elbow fractures, a left-wrist fracture, a fractured left tibia and fibula, and two skull fractures—none of which could have been self-inflicted. Although the elbow fractures could not be dated with certainty, the swelling and Victoria’s distress when she arrived at the hospital indicated “recent trauma; within the past week.” The pediatrician testified that the elbow “corner bucket handle” fractures could not have been accidental, and are seen predominantly in cases of child abuse. She testified that such fractures are caused by “very violent shaking or tearing,” and that it was unlikely that any of Victoria’s siblings could exert the force necessary to cause such fractures. Victoria’s left wrist fracture was *71 between two weeks and three months old, and would have initially caused pain and swelling. The fractures to Victoria’s left tibia and fibula would also have initially caused significant pain and swelling. While the pediatrician testified that it was impossible to determine precisely when these fractures occurred due to a lack of medical or other documentation, she surmised that all were at least one week old.
Furthermore, according to her testimony, the pediatrician found that Victoria had suffered two skull injuries: a displaced fracture on the side of her skull, which she determined to be less than three months old, and a non-displaced occipital skull fracture. While the pediatrician was unable to testify to the exact date that the second fracture occurred, she testified that cranial swelling present at the time of her examination was either unrelated to the fracture or suggested that the fracture was “very recent.”
The pediatrician also testified that Victoria was underweight and suffered from moderate malnutrition. The pediatrician attributed the infant’s loss of appetite to the pain of her successive injuries. The pediatrician opined that given the various stages of healing of the fractures, the lack of any explanation as to how they occurred, and Victoria’s very young age, “all of the fractures were inflicted” on the infant. Victoria’s parents and Merlene R also testified at the fact-finding hearing. Merlene K. testified that she worked as the children’s nanny for approximately eight years until February 16, 2005. She testified that there were instances when Victoria appeared to be injured which she reported to Nancy O. She testified that both parents were uninvolved with their children, and that Nancy was a very “disengaged” mother.
The parents testified that they were happy and satisfied with Merlene R.’s care of their children until the birth of Victoria, at which time Merlene became distracted and distant with the children. The parents speculated that personal and family problems affected her job performance. They admitted to allowing the other children to carry Victoria when she was three months old. Kenneth O. testified that Merlene appeared to be depressed and was inattentive to Victoria. With regard to Victoria’s injuries, the parents claimed that they sought medical attention for Victoria, but that no one diagnosed the fractures. Although Nancy O. testified that “[t]he only explanation that I can come up with is that Merlene did this to the baby,” she conceded that she never saw Merlene behave in a manner likely to have caused Victoria’s injuries.
*72 In a 61-page decision dated January 8, 2010, Family Court concluded that “the severity and large number of Victoria’s injuries themselves, coupled with her very young age . . . make out a clear case of abuse.” The court further found that although “each [r]espondent denied that they ever injured Victoria and tried to suggest that the others were capable of inflicting these injuries,” none of the testimony specifically “inculpate[d] or exculpate[d]” any of the respondents. The court determined that because all three respondents were responsible for caring for Victoria during the period that the injuries took place, all three respondents had abused Victoria within the meaning of section 1012 (e) (ii) of the Family Court Act. The court also entered findings of derivative neglect with regard to Victoria’s three siblings.
On appeal, the respondents argue that the Family Court’s findings of abuse and derivative neglect were not supported by a preponderance of the evidence. The respondents contend that ACS failed to present expert testimony that Victoria’s injuries fit within the statutory definition of abuse. They further argue that even if Victoria was abused, ACS failed to establish precisely when the injuries occurred, and thus cannot show that any of the injuries can be attributed to a particular respondent. Finally, the respondents argue that because there was no evidence indicating that the other three children were abused or neglected, the finding of derivative neglect should be vacated.
For the reasons set forth below, we affirm the decision of Family Court. A child is abused, within the definition of Family Court Act § 1012 (e) (ii), when a parent or other person legally responsible for the child’s care,
“creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ.”
Contrary to the respondents’ argument, expert testimony is not required in order to determine that the injury sustained constitutes abuse under the statute. (See e.g. Matter of Angelique H., 215 AD2d 318, 319-320 [1st Dept 1995] [medical evidence presented in the hospital records demonstrated that the child sustained an injury that fell within the statutory definition].) Evidence of the severity of the injury may be sufficient to *73 meet the statutory definition. (See e.g. Matter of Johnny O., 240 AD2d 179 [1st Dept 1997] [evidence of frequent brutal beatings supported a finding of abuse]; Matter of Robert W., 234 AD2d 23 [1st Dept 1996] [child’s report of being beaten with a stick embedded with nails and corroborating emergency room records was sufficient to support a finding of abuse]; see also e.g. Matter of Christopher P., 30 AD3d 307, 308 [1st Dept 2006], lv denied 7 NY3d 713 [2006] [personal observations of a child protective specialist and medical records corroborated the child’s description of excessive corporal punishment].)
In this case, the testimony of the pediatrician supports a finding of abuse. As Family Court found, the pediatrician’s testimony established that “before she reached the age of six months . . . [someone inflicted] force sufficient to cause seven different fractures on this baby.” The pediatrician specifically testified that two of the fractures Victoria sustained are the type of injuries that occur in child abuse cases as a result of “very violent shaking or tearing.” The testimony of the pediatrician, and indeed of the respondents, indicates that five-month-old Victoria expressed the pain she was suffering as a result of her injuries through symptoms of distress such as fussiness, crying and loss of appetite.
The evidence of the violence perpetrated on a five-month-old infant and the pain she suffered as a result supports Family Court’s finding that respondents abused Victoria by “creating] or allowing] to be created a substantial risk of physical injury to Victoria by other than accidental means which would be likely to cause death . . . disfigurement, or . . . impairment.” Thus, ACS’s failure to present expert testimony that Victoria’s injuries were consistent with the statutory definition is not fatal to ACS’s establishment of a prima facie case of child abuse.
Neither is the inability of ACS to pinpoint the time and date of each injury and link it to an individual respondent fatal to the establishment of a prima facie case against all three respondents. Proof of injuries to a child which would “ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse.” (Family Ct Act § 1046 [a] [ii].) The Court of Appeals, in Matter of Philip M. (82 NY2d 238 [1993]), construed this language to require “(1) an injury to a child which would ordinarily not occur absent an act or omission of respondents, and (2) that respondents were the caretakers of the child at the time the injury occurred.” *74 (82 NY2d at 243.) In that case, the Court found that a prima facie case of abuse was established against both parents because “respondents conceded that they were responsible for the children’s care” (82 NY2d at 245) during the period when the abused child contracted a sexually transmitted disease. Such a presumption of culpability extends to all of a child’s caregivers, especially when they are few and well defined, as in the instant case. (See Matter of Fantaysia L., 36 AD3d 813, 814 [2d Dept 2007] [prima facie case of abuse established against the father and paternal grandmother in one household and the mother and stepfather in another household because the child moved between the two households at the time she contracted a sexually transmitted disease]; Matter of Seamus K., 33 AD3d 1030, 1033 [3d Dept 2006] [prima facie case of abuse against both parents where baby suffered multiple brain bleeds in shaken baby syndrome]; see also Matter of Keone J., 309 AD2d 684, 686-687 [1st Dept 2003] [finding of abuse entered against mother and live-in boyfriend because “(e)ven assuming the child suffered his rib injuries . . . while he was under the care of his father . . . their testimony denying any awareness of any symptoms is incredible”].)
The respondents, relying solely upon this Court’s decision in Matter of Veronica C. v Carrion (55 AD3d 411 [1st Dept 2008]), argue that because the agency cannot identify the specific dates and times of the injuries, it cannot point to any one respondent who was the culpable caregiver. Hence, the respondents assert there is insufficient evidence to make out a prima facie case of abuse against them, much less satisfy the preponderance of evidence standard required for a finding of abuse. This reasoning totally misconstrues our analysis in that case.
In Veronica C., the abuse allegation was directed at the infant’s nanny, who was but one of three caregivers in the household. It also related to just one injury of lacerations on the infant’s hands. The evidence established that “both the child’s parents and [the nanny] acted as the caretakers within the 24 hours” (55 AD3d at 412) preceding diagnosis of the injury. The record in that case also reflected that the evidence consisted of an unsworn statement by the father of the child, and the credible testimony of the nanny that the child was unharmed when she handed him over to his father. Thus, we found that the administrative determination that the nanny was culpable was not supported by substantial evidence, because “it could not be determined on [the] record who the child’s caretaker was at the *75 time of the injury.” (Id.) Hence, the import of our decision, given the distinguishable facts of the case, was simply, and unsurprisingly, that if allegations of child abuse are brought against just one of a child’s multiple caregivers, then the preponderance of evidence must support a finding that only the accused caregiver was in control of the child at the time of injury. To be more precise, the holding could have read: “it could not be determined that the nanny was the caregiver at the time of the [one] injury.” While, as set forth below, establishing the time of an injury may be used by a respondent to rebut evidence of abuse by such respondent, our holding in Veronica C. does not stand for the proposition that charges of abuse must be dismissed if the time of an injury cannot be precisely “pinpointed.”
In any event, in this case, Victoria suffered seven distinct injuries, which, the pediatrician testified, would have caused a loss of appetite and resultant “moderate malnutrition” over a period of three months. Hence, the abuse was ongoing and apparently evident over a period of three months. Family Court therefore correctly found that “the time period within which the injuries or condition arose” was the entire three-month period rather than the dates of each separate injury which could not be determined. Since the three respondents shared responsibility for Victoria’s care during that period, the court also correctly found that ACS had established a prima facie case against all three respondents.
Family Court further correctly determined that the respondents failed to meet their burden of rebutting the evidence of abuse. It is well settled that once a prima facie case is established, respondents may “simply rest without attempting to rebut the presumption.” (Matter of Philip M., 82 NY2d at 244.) Alternatively, respondents may challenge the establishment of the prima facie case by providing evidence that, inter alia, they were not acting in the capacity of caregivers at the time of the injuries, or that the injuries came about as a result of accidents for which they were not responsible. (Id.; see e.g. Matter of Vincent M., 193 AD2d 398 [1st Dept 1993] [testimony by both parents indicated that the infant was in the care of the respondent father and not the respondent mother at the time the infant was injured].)
In this case, although all three respondents denied culpability, none of the respondents established that Victoria was not in his or her care at the time of any of the injuries. Nor could they do *76 so, since, by the respondents’ own argument, the specific dates of the injuries could not be determined. As the court observed “there is no medical proof pinpointing the timing of Victoria’s injuries to a time period specific enough to exculpate or inculpate any of the three [Respondents.”
The court, relying on Matter of Seamus K. (33 AD3d 1030 [2006], supra), observed that “[t]he respondents’ attempts to implicate each other . . . fall short of being satisfactory explanations to rebut the evidence of abuse ... A respondent’s failure to explain a child’s injuries with only a denial that they are at fault is insufficient to rebut a prima facie case of abuse.” Indeed, the court found that there were serious credibility issues with each respondent, and, as the Court of Appeals has observed, the Family Court is in the best position to assess the respondents and their characters. (Matter of Irene O., 38 NY2d 776 [1975].)
Finally, the finding of derivative neglect with respect to Matthew, Katherine and Samantha was supported by substantial evidence. Family Court Act § 1046 (a) (i) states that “proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent.” A finding of abuse with regard to a sibling can constitute a prima facie case of neglect of the other children, if the conduct which constituted abuse “is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists.” (Matter of Cruz, 121 AD2d 901, 903 [1st Dept 1986].) It is not necessary for a sibling to suffer physical injury in order for the court to find derivative neglect or abuse of a sibling. (See Matter of Jorge S., 211 AD2d 513 [1st Dept 1995], lv denied 85 NY2d 810 [1995].) Evidence of the abuse of one child supports the conclusion that “the parents have a faulty understanding of the duties of parenthood and that [any] other child [of the family] is therefore neglected because there is a substantial risk that his or her mental, emotional or physical condition is in imminent danger of becoming impaired” by the same abusive conduct. (Matter of Christina Maria C., 89 AD2d 855, 855 [2d Dept 1982], citing Family Ct Act §§ 1046 [a] [i]; 1012 [f] [i] [B].) Thus, in this case, while there is no evidence that Victoria’s siblings suffered any physical harm, the repeated and severe injuries inflicted upon Victoria indicate that her caregivers failed to understand their duties to the children, and that Victoria’s siblings were in imminent danger of being injured.
Accordingly, the order of disposition of the Family Court, Bronx County (Gayle P. Roberts, J.), entered on or about June *77 7, 2010, which, to the extent appealed from as limited by the briefs, brings up for review a fact-finding determination that respondents had abused the youngest subject child and derivatively neglected the other children, should be unanimously affirmed, without costs.
Tom, J.P, Richter, Abdus-Salaam and Román, JJ., concur.
Order of disposition, Family Court, Bronx County, entered on or about June 7, 2010, affirmed, without costs.

 On February 18, 2005, Family Court remanded Victoria and the youngest of her sisters to the care of the Commissioner of Social Services and paroled the two oldest children to the care of the parents. On October 24, 2005, Victoria’s youngest sister was paroled to her parents. On or about January 11, 2006, Family Court paroled Victoria to her parents with specific conditions not relevant to this appeal. ACS requested a removal hearing pursuant to Family Court Act § 1027 opposing the court’s order. At the conclusion of the hearing, Family Court denied the removal application. On or about June 5, 2008, the court discontinued all supervision of the family.