Matter of Adonis M.C. (Breanna V.M.) (2023 NY Slip Op 00149)

Matter of Adonis M.C. (Breanna V.M.)

2023 NY Slip Op 00149

Decided on January 12, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 12, 2023

Before: Manzanet-Daniels, J.P., Kapnick, Singh, Mendez, Rodriguez, JJ. 

Docket No. NN-14796/19 Appeal No. 17070-17070A Case No. 2021-04755 

[*1]In the Matter of Adonis M.C., A Child Under Eighteen Years of Age etc., Breanna V.M., Respondent-Appellant, Carlos M.C., Respondent, Administration for Children's Services, Petitioner-Respondent.

Law Office of Lewis S. Calderon, Jamaica (Lewis S. Calderon of counsel), for appellant.
Sylvia O. Hinds-Radix, Corporation Counsel, New York (Benjamin H. Pollak of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Polixene Petrakopoulos of counsel), attorney for the child.

Order of disposition, Family Court, New York County (Jane Pearl, J.), entered on or about November 23, 2021, to the extent it brings up for a review a fact-finding order, same court and Justice, entered on or about February 3, 2020, which found that respondent mother neglected the subject child, unanimously affirmed, without costs. Appeal from fact-finding order, unanimously dismissed, without costs, as subsumed in the appeal from the order of disposition.
The mother offers no basis for this Court to revisit the finding of neglect against her. The mother does not dispute that ACS made an initial prima facie showing of parental culpability, as the child's injuries were "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child" (Family Court Act § 1046[a][ii]; see also Matter of Philip M., 82 NY2d 238, 244 [1993]). The child, who was only four months old at the time of his removal from the parents' care, had already sustained at least seven nonaccidental fractures to the bones in his arms, legs, and elsewhere — fractures that medical witnesses, whom the court deemed credible, testified had been caused on multiple occasions by forceful pulling or twisting of the child's limbs.
Rather, the mother claims to have rebutted the presumption of parental culpability because the court entered a finding of abuse against the father. This argument is unavailing, as her claim that a finding of abuse as to one parent bars a finding of neglect by the other contravenes precedent from this Court (see e.g. Matter of Vincent M., 193 AD2d 398, 404 [1st Dept 1993]). Moreover, the Family Court Act permits findings of parental culpability against more than one caretaker where, as here, multiple individuals had access to the child in the period when the injury occurred (see Matter of Nyheem E. [Jamila G.], 134 AD3d 517, 518 [1st Dept 2015]; Matter of Matthew O. [Kenneth O.], 103 AD3d 67, 74 [1st Dept 2012]).
Although the mother suggests that she not was a caregiver for the child during the relevant period, we find that argument unpersuasive. As her own testimony shows, she lived with the child and cared for him at night even while she recovered from her caesarian section, and, although she attended a job training program, she still was home each night and on weekends. Nor does she show that the child's injuries, inflicted on multiple occasions, occurred at times she was not caring for him (see Matter of Travis S. [Moezel J.—Taijon S.], 203 AD3d 478, 479 [1st Dept 2022]).
The mother emphasizes her prenatal preparations, such as taking nursing classes and enrolling in a visiting nurse program, but they shed no light on the reasonableness of her conduct once the child was born. The mother herself testified that, because of postpartum depression, as to which she failed to follow the recommended treatment, she could only care for the child "to a minimum." [*2]Her claim that the child never exhibited pain or any other symptoms of his multiple fractured bones is undermined by her and the father's own statements to medical staff at Brookdale Hospital, in which they asserted that he cried every time they touched his leg.
The record belies the mother's contention that she did not know and could not have known that the father was abusing the child. The father himself mentioned to the caseworker that he had anger issues, and he acknowledged that his treatment of the child could have led to the child's injuries. The mother also testified to one instance in which she reprimanded the father for the way he picked up the child by the shoulder. Furthermore, the medical evidence established the excessive force required to fracture a baby's pliable bones and made clear that the injuries at issue, as evinced by their different stages of healing, were inflicted upon the child on multiple occasions. In the face of this evidence, the mother's broad, conclusory denials of neglectful conduct are unavailing (Matter of Jacob V. [Shelly R.—Adonis V.], 203 AD3d 449, 450 [1st Dept 2022]; Matter of Kaylene H. [Brenda P.H.], 133 AD3d 477, 478 [1st Dept 2015]), and we find no reason to depart from the general rule of deferring to the Hearing Court's
credibility findings (see Matter of Amir A. [Matthew C.], 189 AD3d 401, 402 [1st Dept 2020]; Matter of Andrew R. [Andrew R.], 146 AD3d 709, 710 [1st Dept 2017]). 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 12, 2023