■ In the Matter of KENNETH VV., Petitioner, v BRIAN WING, as Commissioner of the New York State Department of Social Services, Respondent. [652 NYS2d 894] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's request to have his name expunged from the State Central Register of Child Abuse and Maltreatment.

On April 12, 1993, the State Central Register of Child Abuse and Maltreatment (hereinafter the Central Register) received a report alleging that petitioner, an employee at the Tryon Residential Center, a Division for Youth (hereinafter DFY) facility, maltreated Lavar M., a 15-year-old resident at the facil-

ity. The charges stem from an incident which occurred on April 11, 1993 when Lavar, who was engaged in a cleaning project, refused to clean the baseboards in a hallway and went into a utility room to return the cleaning supplies. While in the utility room, petitioner repeatedly ordered Lavar to clean the baseboards and Lavar refused. Ultimately, petitioner placed Lavar in a DFY take-down restraint and brought him to the floor. During the restraint, Lavar's right shoulder was fractured.

After investigating the incident, Colleen Fischer, a child abuse specialist with the Department of Social Services (hereinafter DSS), determined that the report should be indicated and petitioner's name was placed on the Central Register. On July 19, 1993, petitioner requested expungement from the Central Register. DSS denied the request. Thereafter, a hearing was held before an Administrative Law Judge (hereinafter ALJ) who found that there was "some credible evidence" that petitioner had neglected Lavar and denied petitioner's request. Petitioner commenced a proceeding in the US District Court for the Northern District of New York seeking a new hearing; however, the petition was withdrawn upon stipulation, *inter alia*, that DSS would give him a new hearing before a different ALJ, who would apply the appropriate legal standard of preponderance of the evidence rather than the standard used by the previous ALJ.

At the second hearing, the transcripts and exhibits of the previous hearing were submitted pursuant to the parties' stipulation. Respondent presented no new evidence, relying upon the evidence presented at the previous hearing, and petitioner did the same but also presented two new witnesses. The ALJ determined that there was sufficient evidence to support the allegations by a fair preponderance of the evidence and this proceeding ensued.

We confirm. It is now well settled that the "preponderance of the evidence" standard must be employed in an administrative expungement hearing in order to protect an individual's due process rights (*see, Matter of Lee TT. v Dowling*, 87 NY2d 699, 712; *Matter of Nils TT. v New York State Dept. of Social Servs.*, 221 AD2d 874, 874-875, *lv denied* 87 NY2d 812). In reviewing an administrative determination, this Court's inquiry is limited to whether the decision is rational and supported by substantial evidence (*see, Matter of Ottati v Town of Hector Town Bd.*, 229 AD2d 746, 748). Substantial evidence is established when reasonable minds could adequately accept the conclusion or ultimate fact based on the relevant proof (*see, Matter of Berenhaus v Ward*, 70 NY2d 436, 443). If there

is a rational basis for the agency's determination supported by substantial evidence, this Court cannot substitute its own judgment for that of the administrative agency, even if a contrary result is viable (*see, Matter of Ottati v Town of Hector Town Bd., supra,* at 606; *Matter of Spencer v New York State & Local Empls. Retirement Sys.,* 220 AD2d 792, 793).

Here, the allegation is that petitioner inappropriately performed a take-down restraint, not to move Lavar to maintain safety and control as maintained by petitioner but, rather, to punish Lavar for refusing to clean the baseboards. The applicable DSS regulations provide that a neglected child in residential care is one who is physically harmed as a result of a custodian's failure to comply with applicable regulations of the supervising residential care facility, when such result is reasonably foreseeable (*see,* 18 NYCRR 433.2 [d] [4]). Item No. 3247.13 of DFY's policy and procedures manual states that, after all reasonable alternatives have been exhausted, physical force may be used by the staff "only when necessary or where there is an immediate threat to the safety of the resident or of significant property damage". According to both DFY policy regulations and DSS regulations (*see,* 18 NYCRR 441.17 [b]), physical force, including a physical restraint, may not be used as punishment. There is no basis in this record for a conclusion that refusal to complete a work assignment, standing alone, is one of the circumstances in which force may be necessary.

Although petitioner contends that the DFY take-down restraint was appropriate because Lavar's defiant behavior could have caused a disturbance or incited a riot, we note that some of the witnesses stated that Lavar was told by petitioner that if he did not comply with cleaning the baseboards he would be brought to the floor. After the restraint, Lavar was heard telling petitioner that he would clean the baseboards. None of the residents in the vicinity of the incident heard petitioner instruct Lavar to move out of the area. Significantly, petitioner himself, in his statements to Fischer the day after the incident, conceded that he told Lavar that if he did not clean the baseboards, he would be restrained. When confronted with the discrepancy between his testimony and Fischer's interview notes, petitioner testified that Fischer's interview notes were accurate but explained that because he was nervous during the interview and did not feel that he needed to go into detail, he failed to inform Fischer that he directed Lavar to move.

Although there is evidence to support petitioner's contention that the restraint occurred because of the refusal on the part of Lavar to move to a less volatile location, the evidence is suf-

ficient to support the findings and conclusions of the ALJ. It is important to note that it is not within this Court's discretion to weigh conflicting testimony and evidence or second guess the credibility determinations made by the administrative fact finder (*see, Matter of Berenhaus v Ward*, 70 NY2d 436, 444, *supra*; *Matter of Riley v Schles*, 185 AD2d 437, 437-438). In addition, to the extent that petitioner contends that the residents' statements were not reliable and were impermissible hearsay, we note that strict compliance with the rules of evidence is not required and such evidence is admissible in an administrative hearing (*see, Matter of Robert OO. v Dowling*, 217 AD2d 785, 786, *affd* 87 NY2d 1043; *Matter of Martin v Board of Educ.*, 215 AD2d 661). Furthermore, hearsay evidence can, in the proper case, serve as a substantial basis to support the underlying determination (*see, Matter of Robert OO. v Dowling, supra*, at 786).

Finally, even accepting petitioner's argument that the decision from the first ALJ was improperly placed into evidence as beyond the scope of the stipulation, we find no reason to annul the determination under review. The ALJ in the second proceeding specifically stated that he only accepted the prior decision because he considered it to be part of the record and did not consider it "to be additional evidence in support of [DSS'] determination". Significantly, petitioner fails to assert how he was prejudiced by the admission of the prior decision and our review of the record reveals no evidence of impropriety.

Mikoll, Crew III, Yesawich Jr. and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.