*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 22, 2015                    518217
_____

In the Matter of GWEN Y.,
                    Petitioner,

        v                              MEMORANDUM AND JUDGMENT

NEW YORK STATE OFFICE OF
    CHILDREN AND FAMILY
    SERVICES,
                    Respondent.
_____

Calendar Date:   September 8, 2015

Before:  McCarthy, J.P., Egan Jr., Rose and Clark, JJ.

                        _____


        Arroyo Copland & Associates, PLLC, Albany (Amy C. Kendall
of counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Julie
Sheridan of counsel), for respondent.

                        _____


Egan Jr., J.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Greene County) to
review a determination of respondent denying petitioner's
application to have a report maintained by the Central Register
of Child Abuse and Maltreatment amended to be unfounded and
expunged.

        On the afternoon of May 3, 2012, petitioner put her three
young children down for a nap.  Shortly thereafter, petitioner's
youngest daughter (hereinafter the child), who then was 2½ years
old, called out and indicated that she had "pooped."  Petitioner
did not immediately respond, as the child previously had made

similar claims in an effort to avoid nap time. When the child called out again, petitioner went into the children's bedroom and found her son and the child standing in the middle of the room. Petitioner confirmed that the child indeed needed a diaper change and bent over to pick up the child and lay her down on the floor. As petitioner was doing so, her son, who apparently had taken it upon himself to check his sister's diaper, announced that he had "poopy on [his] hands." Petitioner turned to look at her son and, in the process, "let go" of the child, whose feet were estimated by petitioner to be 4 to 12 inches from the floor, with the intention that the child would land on her bottom. The child, however, apparently landed on some portion of her lower extremities and began to whimper. Petitioner initially concluded that the child had sprained her ankle and applied an ice pack, but when the child continued to complain, petitioner took the child to a local urgent care center where an X ray revealed a fracture of the child's right tibia.

As a result of this incident, a report was made to the Central Register of Child Abuse and Maltreatment and, following an investigation, the report was marked as indicated.[1] After respondent denied petitioner's request to amend the report from indicated to unfounded, an administrative hearing was held pursuant to Social Services Law § 422 (8). At the conclusion of that hearing, the finding of maltreatment as to the child was upheld and petitioner's request to amend the subject report was denied.[2] Petitioner thereafter commenced this CPLR article 78 proceeding seeking to challenge the underlying determination.

---

[1] Petitioner was removed from the home for approximately three months. Although a related neglect proceeding was commenced against petitioner, that proceeding was adjourned in contemplation of dismissal without a finding of wrongdoing; a separate criminal proceeding against petitioner stemming from this incident also was adjourned in contemplation of dismissal.

[2] The allegations of excessive corporal punishment as to petitioner's son were not sustained and are not at issue in this proceeding.

"To establish maltreatment, the agency was required to show by a fair preponderance of the evidence that the physical, mental or emotional condition of the child had been impaired or was in imminent danger of becoming impaired because of a failure by petitioner to exercise a minimum degree of care in providing the child with appropriate supervision or guardianship" (Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1175 [2015] [citations omitted]; see Matter of Maurizio XX. v New York State Off. of Children & Family Servs., 125 AD3d 1174, 1174-1175 [2015]).  As there is no dispute that the child suffered a broken leg, there can be no question that her physical condition was in fact impaired.  Accordingly, our inquiry distills to whether the record supports a finding that such impairment was the result of petitioner's failure to provide appropriate supervision and guardianship.

In this regard, the evidence against petitioner consisted primarily of the investigation progress notes, which summarized the caseworker's interviews with, among others, petitioner's son, the child's treating orthopedic surgeon and the child's geneticist.[3]  "[T]here is no question that hearsay is admissible in expungement hearings and, if sufficiently relevant and probative, may constitute substantial evidence to support the underlying determination" (Matter of Theresa WW. v New York State Off. of Children & Family Servs., 123 AD3d 1174, 1176 [2014] [internal quotation marks and citations omitted]; see Matter of Gerald HH. v Carrion, 130 AD3d at 1175-1176).  That said, the substantial evidence standard is not satisfied where, as here, the hearsay evidence at issue is "seriously controverted" (Matter of Gerald HH. v Carrion, 130 AD3d at 1176 [internal quotation marks and citation omitted]).

According to the progress notes, the treating orthopedic surgeon, who "[did] not believe that [petitioner] should have [custody of] the child," advised the caseworker that the child's injury could not have occurred in the manner described by

---

[3]  Neither the caseworker nor the child's treating orthopedist testified at the hearing, and the child's geneticist was unavailable to testify due to declining health.

petitioner because "more force would be needed to cause" what he regarded as "a spiral fracture of the [t]ibia." The orthopedist, however, was unaware that the child had been diagnosed with hemihypertrophy – a condition that caused the left side of the child's body to grow faster than the right side. As explained by the child's geneticist, this condition could cause the bones on the right side of the child's body to be "more susceptible to pressure."[4] Indeed, the caseworker's notes reflect that, according to the geneticist, a drop "even from [two] inches above the ground" could have caused the child's weight to shift to her more sensitive right foot. Further, with respect to the resulting fracture, the geneticist, who reviewed the initial X rays, was not convinced that the child actually had sustained a spiral fracture, noting that the fracture "look[ed] to be going through the bone" rather than "circling the bone the way it would in a spiral fracture."

Although the agency also relied upon the caseworker's interview of petitioner's then 4½-year-old son, his teacher, who was present for the interview and testified at the administrative hearing, expressed misgivings as to the manner in which that interview was conducted. In conjunction with the earlier neglect proceeding, the teacher submitted an affidavit – entered into evidence at the subsequent administrative hearing without objection – wherein she averred that, during the course of the interview, the caseworker "press[ed]" petitioner's son and "[made] suggestions to him about [petitioner's] conduct on the day of the incident, including suggestions about the way [petitioner] was standing . . . and how she was holding [the child]." According to the teacher, by the time the interview concluded, the caseworker succeeded in "provok[ing the child], who was clearly frustrated, to throw the doll he was holding on the floor in accordance with [the agency's] theory of how his sister was injured." The teacher, who testified that she had not

---

    [4] Petitioner testified that she was unaware of the child's increased susceptibility to bone fractures, and the geneticist confirmed that he had not discussed this possibility with petitioner or her husband prior to the child's injury.

observed any indications of abuse, averred that, in her opinion, petitioner's son would not have thrown the doll in the fashion that he did "but for the suggestive and insistent conduct of [the] caseworker[]."

Finally, petitioner submitted affidavits from the child's pediatrician and a family friend, neither of whom had ever seen any indications of abuse or neglect, as well as the report prepared by the psychologist who performed a mental health evaluation of her. According to the psychologist, her evaluation of petitioner disclosed no mental health or substance abuse disorders and revealed no prior history of violent behavior or impulse control problems. The psychologist deemed petitioner's account of the underlying incident to be "detailed and credible," concluded that petitioner was not a "candidate for anger management" counseling and advocated for petitioner's "return to her home as soon as possible" in order to "reduce the likelihood of further emotional damage to her children and the integrity of the family unit." In conclusion, the psychologist found that the child's injury "appear[ed] to be an isolated and aberrant incident . . . [that was] not reflective of [petitioner's] typical pattern and practice of parenting."

Upon due consideration of the record as a whole, we find that the evidence relied upon by the agency was significantly undermined by the proof tendered by petitioner. As such, we are unable to conclude that respondent's determination is supported by substantial evidence. Accordingly, the underlying determination is annulled.

McCarthy, J.P., Rose and Clark, JJ., concur.

ADJUDGED that the determination is annulled, without costs, and petition granted.

ENTER:

Robert D. Mayberger
Clerk of the Court