*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 23, 2017                    522833
_____

In the Matter of ELIZABETH B.,
                    Petitioner,

      v                                           OPINION AND JUDGMENT

NEW YORK STATE OFFICE OF
    CHILDREN AND FAMILY
    SERVICES,
                    Respondent.
_____

Calendar Date:   January 18, 2017

Before:  McCarthy, J.P., Garry, Lynch, Devine and Mulvey, JJ.

_____

        Christy Lay-Mumin, The Legal Project, Albany, for
petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Allyson B.
Levine of counsel), for respondent.

        Patterson Belknap Webb Tyler, LLP, New York City (William
F. Cavanaugh of counsel), for Empire Justice Center and others,
amici curiae.

_____

Garry, J.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Rensselaer
County) to review a determination of respondent partially denying
petitioner's application to have a report maintained by the
Central Register of Child Abuse and Maltreatment amended to be
unfounded and expunged.

Petitioner is the mother of three children (born in 2002, 2011 and 2014).  In June 2014, petitioner's paramour, the father of the youngest child, physically assaulted her on two occasions. During the first incident, the paramour, while driving on a high speed road, punched her in the arm and leg.  Their three-week-old child was in the backseat at this time.  The following day, the paramour struck petitioner in the back as she held the youngest child, causing her to fall, and then choked and threatened her. This incident was observed by the eldest child.  Petitioner reported both incidents to police three days later, and the paramour was taken into custody.  The Ontario County Department of Social Services (hereinafter DSS) conducted an investigation and filed a report with respondent thereafter, indicating petitioner for maltreatment by inadequate guardianship, as pertinent here.  Following a hearing pursuant to Social Services Law § 422 (8) (b), petitioner's request for amendment and sealing of the report was granted in part but denied as to inadequate guardianship.  Petitioner then commenced this CPLR article 78 proceeding seeking review of that determination.

This Court's review of the determination is "limited to whether the decision is rational and supported by substantial evidence" (Matter of Kenneth VV. v Wing, 235 AD2d 1007, 1008 [1997]; see Matter of Cheryl Z. v Carrion, 119 AD3d 1109, 1110 [2014]).  Maltreatment is established where it is shown "by a fair preponderance of the evidence that the physical, mental or emotional condition of the child [was] impaired or was in imminent danger of becoming impaired because of a failure by [the] petitioner to exercise a minimum degree of care in providing the child with appropriate supervision or guardianship" (Matter of Gwen Y. v New York State Off. of Children & Family Servs., 132 AD3d 1091, 1092 [2015] [internal quotation marks and citations omitted]; see Nicholson v Scoppetta, 3 NY3d 357, 370 [2004]; see generally Matter of Natasha W. v New York State Off. of Children & Family Servs., 145 AD3d 401, 406 [2016]; Matter of Batchateu v Peters, 77 AD3d 1366, 1366 [2010]).  The minimum degree of care standard acts as a "baseline of proper care for children that all parents, regardless of lifestyle or social or economic position, must meet" and a failure thereof must be "actual, not threatened" (Nicholson v Scoppetta, 3 NY3d at 370 [internal quotations marks and citations omitted]; see Matter of

Natasha W. v New York State Off. of Children & Family Servs., 145 AD3d at 406). "When the sole allegation is that the [subject parent] has been abused and the child has witnessed the abuse, such a showing has not been made" (Nicholson v Scoppetta, 3 NY3d at 371 [internal quotation marks omitted]). Where the parent is the victim of domestic violence, "the focus must be on whether [he or] she has met the standard of the reasonable and prudent person in similar circumstances" (id. at 370-371). Respondent misconstrues this standard as one that cannot be "modified or excused because a parent is under stress or fear." It has instead been clearly established that in the context of domestic violence, whether a parent has exercised a minimum degree of care requires consideration of such factors as the "risks attendant to leaving, if the batterer has threatened to kill [him or] her if [he or] she does; risks attendant to staying and suffering continued abuse; . . . and risks attendant to relocation" as well as "the severity and frequency of the violence, and the resources and options available to [him or] her" (id. at 371).

Here, the evidence consisted of a caseworker's testimony and notes regarding her investigation, including interviews with petitioner and the eldest son, and petitioner's testimony.[1] Respondent's finding that petitioner failed to exercise a minimum degree of care was based upon petitioner's delay in reporting the incidents, the fact that she declined counseling services suggested by DSS, her subsequent request to modify the order of protection to permit communication with her paramour, and the possibility of their future reunification. Initially, addressing petitioner's brief delay in reporting the abuse, it is well recognized that the most dangerous time in an abusive relationship occurs when the victim attempts to separate from the abuser (see Dana Harrington Conner, To Protect or to Serve: Confidentiality, Client Protection, and Domestic Violence, 79 Temp L Rev 877, 887 [2006]; Susan L. Pollet, Mediating Domestic

---

[1] Hearsay is admissible in expungement hearings, unless the underlying facts are "seriously controverted" (Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1176 [2015] [internal quotation marks and citation omitted]; see Matter of Gwen Y. v New York State Off. of Children & Family Servs., 132 AD3d at 1092-1093).

Violence: A Potentially Dangerous Tool, 77 NY St BJ 42, 43 [Sept. 2005]).  Here, petitioner testified that upon being told that he should leave the home, her paramour choked her and threatened that "if [she] ended it that he would end it."  There was no history of violence prior to the attacks, which occurred on two consecutive days.  Petitioner was the primary caregiver for the three children — one of whom was three weeks old — and critically, she did not have access to a vehicle until the day that she made the report.  Petitioner testified that, immediately following the attacks, "[she] did not have enough resources at that time in [her] mind to . . . go, but [she] had a plan."  After discussing her plan with family members, and as soon as she had a vehicle, petitioner took her two older children to the homes of relatives and brought the youngest child with her to report the incidents to the police.  A finding that petitioner failed to exercise a minimum degree of care cannot be supported where the record reveals that she acted reasonably under the circumstances and thoughtfully planned a strategy to report her paramour's abuse in such a way as to protect her own safety and that of her children (see Nicholson v Scoppetta, 3 NY3d at 370-371).

As to the counseling services suggested by DSS, the record reveals that petitioner and the eldest child instead sought counseling and advice from their priest, who had some experience assisting families in similar circumstances.  Notably, there was no requirement that petitioner or the child engage in counseling services.  In these circumstances, it would be improvident to suggest that a victim of domestic violence fails to exercise a minimum degree of care by seeking counseling services for his or her children from a resource other than that suggested by DSS.

Respondent's finding that petitioner's request to modify the order of protection to permit discussion of finances and child care with her paramour amounts to no more than "undesirable parental behavior," as the paramour was incarcerated and petitioner had not brought the children to visit him (id. at 369; see Matter of John O., 42 AD3d 687, 687-688 [2007]).  With regard to the possible future reunification of petitioner and her paramour, substantial evidence does not arise from mere conjecture about events that may never come to pass (see 300

Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; Matter of Reed v Carrion, 84 AD3d 1094, 1094 [2011]). Further, petitioner testified that she would require the paramour's completion of all court-ordered requirements such as anger management and domestic violence awareness classes.

Finally, we find no basis in the record to support respondent's finding that petitioner's actions resulted in impairment or immediate danger to the children. A finding of impairment "requires proof of actual (or imminent danger of) physical, emotional or mental impairment to the child" (Nicholson v Scoppetta, 3 NY3d at 369; see Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73, 78-79 [1995]). An immediate danger must be "near or impending" and more than "merely possible" (Nicholson v Scoppetta, 3 NY3d at 369; Matter of Nichols v New York State Cent. Register of Child Abuse & Maltreatment, 137 AD3d 790, 791 [2016]; Matter of Sasha B. [Erica B.], 73 AD3d 587, 588 [2010], appeal dismissed 16 NY3d 755 [2011]). Although the record supports a finding that the youngest child was placed in immediate danger during both incidents and that the eldest child suffered emotional impairment after witnessing the second incident, neither the danger nor the impairment were the consequence of petitioner's actions. As a result of petitioner's actions shortly thereafter, the paramour was incarcerated and an order of protection was issued; these circumstances continued through the time of the hearing. This determination renders petitioner's remaining contentions academic.

McCarthy, J.P., Lynch, Devine and Mulvey, JJ., concur.

ADJUDGED that the determination is modified, without costs, by annulling so much thereof as partially denied petitioner's application to have the subject indicated report be amended to be unfounded; petitioner's application granted in its entirety, said report expunged and the record sealed; and, as so modified, confirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court