Matter of Charlotte MM. v Commissioner of Children & Family Servs. (2018 NY Slip Op 01367)





Matter of Charlotte MM. v Commissioner of Children & Family Servs.


2018 NY Slip Op 01367


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

524491

[*1]In the Matter of CHARLOTTE MM., Petitioner,
v
COMMISSIONER OF CHILDREN AND FAMILY SERVICES, Respondent.

Calendar Date: January 12, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Pritzker, JJ.


Law Office of Vincent U. Uba, Albany (Vincent U. Uba of counsel), for petitioner.
Eric T. Schneiderman, Attorney General, Albany (Laura Etlinger of counsel), for respondent.


McCarthy, J.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Office of Children and Family Services denying petitioner's application to have a report maintained by the State Central Register of Child Abuse and Maltreatment amended to be unfounded and expunged.
Petitioner is the mother of four children. In October 2010, while she and her ex-husband were engaged in a custody dispute, two of the children (then ages 13 and 17) were living with petitioner in Schenectady County and the other two were living with their father in Cortland County. Petitioner traveled to Nigeria for nine days to see her ill mother, without informing
the children that she was leaving the country. The Cortland County Department of Social Services (hereinafter DSS) was directed to investigate the situation. After conducting an investigation, DSS indicated its report against petitioner for inadequate guardianship and lack of supervision of the two children.
Petitioner requested a hearing to challenge the findings of child maltreatment and to have the indicated report amended to be unfounded and expunged from the State Central Register of Child Abuse and Maltreatment. At the hearing, DSS relied on its case file, including investigation progress notes. Petitioner testified on her own behalf. The Office of Children and Family Services (hereinafter OCFS) determined that petitioner failed to exercise the minimum degree of care under the circumstances, that it was not reasonable to leave the subject children [*2]alone without planning for their supervision and that the report of maltreatment was established by a fair preponderance of the evidence. Petitioner moved for reconsideration, but OCFS replied that it lacked authority to entertain the motion. Petitioner then commenced this CPLR article 78 proceeding seeking review of OCFS's decision and its refusal to reconsider [FN1]. Because the issue to be decided in this proceeding is whether OCFS's determination was supported by substantial evidence, Supreme Court transferred the proceeding to this Court (see CPLR 7804 [g]).
We confirm. Initially, petitioner claims that OCFS and DSS failed to provide her with complete information before the hearing. The record contains a cover letter indicating that the file was provided to petitioner before the hearing. Petitioner's counsel came to the hearing with a copy of DSS's case file, although it had apparently been reproduced by petitioner in a format that omitted some of the text. The Administrative Law Judge (hereinafter ALJ) allowed counsel to view DSS's copy of documents before the hearing and for that office to provide him with a complete copy afterward. Counsel did not object to this procedure, stated that he wanted to proceed that day and did not object to admission of the case file into evidence. In this context, we reject the argument that petitioner was deprived of due process in relation to disclosure of evidence.
Further, the ALJ did not violate lawful procedure by declining to accept statements signed by the two children or allow them to testify by telephone. The ALJ initially noted that OCFS does not normally receive testimony from children who were alleged to have been maltreated. In the context of administrative hearings with relaxed evidentiary rules, this policy is rational because it protects children from being forced to testify regarding abuse or maltreatment and from being coached to provide testimony that assists the parent alleged to have abused or maltreated those children. Given these concerns, the ALJ did not abuse his discretion in declining to admit the children's statements. After seeking an offer of proof from petitioner's counsel, the ALJ concluded that the children would not have much to add beyond what was already included in the record. Counsel agreed that many of the things that the children said in their statements were contained in DSS's report. Additionally, the children's written statements, although notarized, were not sworn to under penalties of perjury. Under the circumstances of this administrative proceeding, where the ALJ had discretion with regard to the admission of evidence, the ALJ did not violate lawful procedure.
On the merits, this Court's review of OCFS's determination is limited to whether substantial evidence supports the finding of maltreatment (see Matter of Elizabeth B. v New York State Off. of Children & Family Servs., 149 AD3d 8, 10 [2017]; Matter of Susan XX. v Tioga County Dept. of Social Servs., 74 AD3d 1543, 1543-1544 [2010]). "To establish maltreatment, the agency [is] required to show by a fair preponderance of the evidence that the physical, mental or emotional condition of the child[ren] had been impaired or was in imminent danger of becoming impaired because of a failure by petitioner to exercise a minimum degree of care in providing the child[ren] with appropriate supervision or guardianship" (Matter of Gwen Y. v New York State Off. of Children & Family Servs., 132 AD3d 1091, 1092 [2015] [internal [*3]quotation marks and citation omitted]; see 18 NYCRR 432.1 [b] [1] [ii]). Courts will generally not interfere with the credibility determinations made by an agency after a hearing and, "[i]f substantial evidence is present in the record, this Court cannot substitute its own judgment for that of the administrative agency, even if a contrary result is viable" (Matter of Stephen C. v Johnson, 39 AD3d 932, 933 [2007] [internal quotation marks and citation omitted], lv denied 9 NY3d 804 [2007]). "[H]earsay is admissible in expungement hearings and, 'if sufficiently relevant and probative, may constitute substantial evidence to support the underlying determination'" (Matter of Ribya BB. v Wing, 243 AD2d 1013, 1014 [1997], quoting Matter of Robert OO. v Dowling, 217 AD2d 785, 786 [1995], affd 87 NY2d 1043 [1996]; see Matter of Michael NN. v Chenango County Dept. of Social Servs., 155 AD3d 1463, 1465 [2017]; Matter of Markman v Carrion, 120 AD3d 1580, 1581 [2014]).
Here, where there were discrepancies, OCFS generally credited the investigation notes over petitioner's testimony. Although OCFS did find a few particular facts that are not supported by the record, we see no reason to disturb the credibility findings and the majority of factual findings in the determination. Petitioner testified that she left her children for nine days while she was in Nigeria. She testified that her neighbors were watching the children, but she did not sign any releases for them to provide medical treatment or for educational purposes. The investigation notes include summaries of interviews with the neighbors, the children, petitioner and her ex-husband. According to most of those sources, petitioner did not tell them where she was going, and there was confusion over when she would return from her trip. The neighbors explained that petitioner asked them to knock on the door and wake the children each morning, but the neighbors did not stay at petitioner's apartment and were not asked to supervise the children. They told DSS that, after the investigation began, petitioner asked them to lie to the caseworker about petitioner's instructions and their level of supervision over the children.
While petitioner was away, the 13-year-old child was suspended from school, and a teacher could not reach petitioner to discuss the situation. The two children argued, requiring intervention by a neighbor. The oldest child told DSS that the food that petitioner had left for them turned rancid and they did not have any money, so their father had to wire them money for food. Both children were distressed or scared due to being left alone without a plan for their care. Substantial record evidence supports OCFS's conclusion that petitioner left the children alone for nine days without a viable plan for them, such that she placed the children in imminent harm by failing to provide adequate supervision and guardianship while she was abroad, and without any means for the children to communicate with her (see generally Matter of Stephen C. v Johnson, 39 AD3d at 933).
Garry, P.J., Egan Jr., Lynch and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: While this proceeding was pending, OCFS agreed to entertain petitioner's request for reconsideration, but denied the request because petitioner failed to present new evidence that would change the outcome. This action by OCFS rendered moot petitioner's challenge to the original refusal to reconsider, and petitioner has not challenged OCFS's decision after entertaining the request.